## APPEAL OF M. J. SULLIVAN.

Docket No. 967.   Submitted April 6, 1925.   Decided October 27, 1925.

Upon the evidence, *held*, that the transfer by taxpayer to his wife of an interest in an oil well was a *bona fide* gift, and that the subsequent sale did not result in taxable income to the taxpayer.

*Frank A. Boys, Esq.*, for the taxpayer.
*A. Calder Mackay, Esq.*, for the Commissioner.

Before STERNHAGEN, TRAMMELL, PHILLIPS, and LOVE.

This is an appeal from the determination of a deficiency in income taxes for the years 1919 to 1921, inclusive, in the total sum of $80,121.21, comprising deficiencies for 1919 of $46,148.89; for 1920 of $15,742.38; and for 1921 of $18,229.94. Taxpayer alleges error on the part of the Commissioner in including in taxable income of the taxpayer the proceeds of the sale of an interest in a certain oil lease, which lease he claimed was given by him to his wife prior to such sale. He also alleges that, even if it be held that the proceeds of such sale are income to the taxpayer, the Commissioner committed error in computing the tax liability under the provisions of the statute imposing a graduated surtax, instead of under the provisions limiting the surtax in the case of a sale of oil or gas wells or any interest therein where the principal value of the property has been demonstrated by prospecting or by exploration and discovery work done by the taxpayer. The entire amount of the deficiency is not involved in this appeal.

### FINDINGS OF FACT.

The taxpayer is a resident of Kansas City, Mo., and during the year 1919 was engaged in business as an oil producer and oil-well contractor.

In the fall of the year 1918 taxpayer called upon one Prater and endeavored to secure from him an oil lease to 70 acres of land, but no agreement was negotiated. On January 20, 1919, Prater entered into a lease with the Robert Lee Oil Co. by which that company, in consideration of a payment of $34,875, was granted the right to take from the lands of Prater, subject to the other terms of such lease, any oil that might be found thereon. This lease provided for its termination unless a well was commenced on the land before December 21, 1919, but contained provisions for extensions of such period upon the making of certain payments. The lease further provided that the lessor should receive an equal one-eighth part of all oil produced and saved from the leased premises. Upon learning

of this lease taxpayer opened negotiations with the Robert Lee Oil Co. with a view to acquiring such lease, and a tentative arrangement was made by which the taxpayer was to repay to that company the amount paid by it to the landowner, to assume the obligations of the lease, to drill a well upon the premises and finance any subsequent development, and to deliver to the Robert Lee Oil Co. three-eighths of the oil produced from the property after the payment of the royalty to the owner of the land. With the negotiations in this form, taxpayer took up the matter with an officer of the Gulf Production Co., and thereafter an agreement was worked out between the Robert Lee Oil Co. and the Gulf Production Co. along the lines of the tentative agreement between the taxpayer and the Robert Lee Oil Co.

On February 28, 1919, the Gulf Production Co. and the taxpayer entered into an agreement reciting that, by reason of certain services performed by the taxpayer, he was entitled to an interest in this Prater lease, and providing that, after the Gulf Production Co. should be reimbursed for the sum of $35,000 paid by it to the Robert Lee Oil Co. and should have been reimbursed in full for the cost and expense of drilling a well upon the leased property, taxpayer should be entitled to receive one-eighth of the oil produced from such property after the payment of royalties to the owner of the land. At the time these agreements were entered into the nearest producing well was about 1¼ miles from the southern end of the leased property. The next producing well was approximately 20 miles distant.

The Gulf Production Co. drilled a well which came in with a flow of between 3,000 and 4,000 barrels in June, and taxpayer immediately undertook to find a purchaser for his interest.

In July, 1919, the taxpayer entered into negotiations for the sale of his interest in this lease with one Kenefick, who acted on behalf of the Progressive Oil Co. At the time of the assignment to his wife, hereinafter set forth, taxpayer and Kenefick had arrived at a tentative price of $225,000, which it was understood would have to be paid largely in notes of the company which would finance the purchase by the sale of its capital stock. At that time no agreement had been reached as to the amount of cash to be paid, or as to the amounts, maturities, or conditions of the notes or the security to be given. The arrangement was entirely oral. Kenefick had not obtained the consent of the directors of his company. There was no written agreement, and no money had been paid. These negotiations were conducted at Forth Worth, Tex.

From Fort Worth, taxpayer returned to his home in Kansas City on or about July 26 or 27, 1919, where, after consulting with his wife and with his attorney, taxpayer, on July 28, 1919, executed and

delivered to his wife an assignment of his interest in the Prater lease in the following words:

### ASSIGNMENT

In consideration of natural love and affection, and the sum of $1 I hereby give, bargain, sell, transfer, assign and convey unto Clara Torrance Sullivan, my wife, as her sole and separate property, all of my right, title and interest in and to the leasehold estates described in the within instrument and all of my rights under said instrument.

Executed at Kansas City, Missouri, this 28th day of July, 1919,

M. J. SULLIVAN.

This instrument was attached to the agreement between taxpayer and the Gulf Production Co. and appears to have been duly acknowledged before a notary public on the same day. Between July 27 and July 30, 1919, several conferences were held between taxpayer, Kenefick, and their attorneys, as a result of which a contract was drawn up between Clara T. Sullivan, party of the first part; Sullivan, party of the second part; and Progressive Production Co., party of the third part, reciting and setting out as exhibits thereto the contract between Sullivan and the Gulf Production Co. and the assignment of such contract from Sullivan to his wife, in which the Progressive Production Co. agreed to purchase from Clara T. Sullivan all her right, title, and interest in the said Prater lease and in the contract relating thereto. The consideration was the sum of $238,000, payable $5,000 in cash and the balance in installments over a period of approximately two years, Clara T. Sullivan in the meantime retaining title to all her rights in the Prater lease and the contract relating thereto. Such contract further provided:

4. Second party consents to this contract and agrees to join with first party, his wife, in the execution of any and all instruments which may be necessary to enable her to carry out the terms of this contract.

This agreement was executed by Sullivan and his wife on July 30, 1919, before a notary public. It was executed by the Progressive Production Co. on August 7, 1919, and acknowledged by the president before a notary public, the delay being due to the necessity of securing the authorization of the board of directors.

The entire proceeds of the contract with the Progressive Production Co. were received by Clara T. Sullivan and retained as her individual property.

At the time this assignment was made by taxpayer to his wife, taxpayer was the owner of a number of similar interests in various oil leases, some of which were producing, but none of which had a value as substantial as that of the one here involved.

### DECISION.

The deficiency determined by the Commissioner is disallowed in so far as it is based upon the inclusion as income to the taxpayer of any of the proceeds of the sale of the interest in the Prater lease covered by the contract of July 30, 1919, between taxpayer's wife, taxpayer, and the Progressive Production Co. Final determination will be settled on consent or on 15 days' notice, in accordance with Rule 50.

### OPINION.

Phillips: The decision of this appeal involves two questions: (1) Whether the assignment made by the taxpayer to his wife on July 28, 1919, was an assignment of his interest in the Prater lease or of the proceeds of a sale of that lease; and (2) if the Commissioner is wrong in his first contention, whether the taxpayer realized taxable income at the time the contract was executed between him and the Gulf Production Co., conveying to him a one-eighth interest in the oil produced from the Prater lease, subject to the payment of the amounts mentioned in that contract. The decision of the first question depends upon whether taxpayer, at the time of the assignment to his wife, had made an agreement for the sale of his interest to the Progressive Production Co. After a careful review of the oral and documentary evidence we conclude that at the date of such assignment the negotiations for the sale were in an inchoate state and not enforceable by or against either the taxpayer or the Progressive Production Co. The evidence also establishes that the assignment was a *bona fide* assignment and that, while the husband continued the negotiations for the sale of the property, he was acting on behalf of his wife, who was not familiar with such business, and that the proceeds were received and retained by the wife. The *bona fides* appears to be conceded. The Commissioner has determined that for subsequent years the income from investments by the wife of the proceeds of the contract was taxable as her income.

The contract provided for a total sale price of $238,000, of which only $5,000 was paid in cash, and the evidence establishes that the Progressive Production Co. was without any considerable assets.

The Commissioner determined that the proceeds from the contract with the Progressive Production Co. were to be reported as income for the years in which the notes of that company were paid and not as income for 1919. This appears to have been upon the theory that the notes of the Progressive Production Co. had no readily realizable market value.

The Commissioner further contends that, if no income was realized by the taxpayer when the interest in the Prater lease was sold to

the Progressive Production Co., nevertheless the taxpayer realized some taxable gain at the time the contract was entered into between himself and the Gulf Production Co., giving to him a one-eighth interest in the oil produced from the Prater lease. No value of this interest has been fixed by the Commissioner, nor can any value be determined from the proof before us. The Commissioner relies upon the presumption that, a deficiency in tax having been determined, the burden of proof is upon the taxpayer to establish that such deficiency is incorrect.

Where the facts upon which the Commissioner bases his determination are shown to be incorrect it may well be doubted whether any presumption of correctness can result because certain other sums might be taxable as income to the taxpayer. It appears in this case, however, that the interest of the taxpayer, when received, had no more than a speculative value. The tract had not been proven; the nearest producing well was 1¼ miles from the property and the next 20 miles. No well had been drilled, and before the taxpayer could receive income from his interest it was essential that the sum of $35,000, paid for the lease, be reimbursed to the Gulf Production Co., as well as the cost and expense of drilling the well. Certainly, the value of the taxpayer's interest in the Prater lease, when received by him, was at most a very small fraction of the amount subsequently realized when the land had been proven. In the absence of any proof that this interest had a market value, the deficiency, so far as this phase of the appeal is concerned, must be disallowed.